20-2257-MJ-MCALILEY

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

NOV - 7 2019

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:19-CR-332-TSE |
| | ) | |
| v. | ) | Counts 1-5: 18 U.S.C. §§ 1343 and 2 |
| | ) | (Wire Fraud) |
| ROBERTO CLARK, | ) | |
| a/k/a "Roberto John Clark, Jr." | ) | Forfeiture Notice |
| a/k/a "Roberto John Clark," | ) | |
| a/k/a "Berto Clark," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### Indictment

November 2019 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

### COUNTS 1 – 5

### (Wire Fraud)

At all times relevant to this Indictment, unless otherwise stated:

*General Allegations Regarding Relevant Persons and Entities*

1. Defendant ROBERTO CLARK ("CLARK") resided in the greater Washington, D.C. metropolitan area, with a primary residence in or around Bethesda, Maryland. CLARK was also known as "Roberto John Clark, Jr.," "Roberto John Clark," and "Berto Clark."

2. CLARK caused to be incorporated in Florida an entity known as KRM Services, LLC ("KRM Services"), with a principal place of business in Arlington, in the Commonwealth and Eastern District of Virginia. CLARK also claimed to control Surfstream, LLC, which he

1

described as an operating division of KRM Services. It was a purported business purpose of KRM Services to offer motorized surfboards for sale to cruise lines and other businesses in the hospitality, tourism and water sports industries.

3. CLARK also did business as Poseidon Jetboards, LLC ("Poseidon"), purportedly offering motorized surfboards for sale to cruise lines and other businesses in the hospitality, tourism and water sports industries.

4. CLARK controlled the email account Rclark@krmservices.biz as part of the scheme described below.

### *The Scheme and Artifice To Defraud*

5. Beginning no later than in or about September 2016, and continuing through at least in or about February 2019, defendant ROBERTO CLARK, in the Eastern District of Virginia and elsewhere, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and transmitted and caused to be transmitted interstate wire communications in furtherance of the scheme, in violation of Title 18, United States Code, Section 1343 and 2.

6. It was a purpose and object of the scheme for CLARK to obtain funds from individuals by knowingly making materially false representations and promises regarding his businesses, namely KRM Services, Surfstream and Poseidon. CLARK knowingly made materially false statements to potential investors, offering investors a quick and profitable return on money that he claimed would go toward the acquisition and development of products, such as motorized surfboards, which would be supposedly resold at a profit to third parties. CLARK knowingly and intentionally presented fictitious purchase orders of products from third parties

and others in order to induce investors and potential investors to part with money and property. Upon receipt of money from clients, CLARK would use substantial portions of the investments to fund his personal expenses.

*Manner and Means of the Scheme*

The manner and means by which CLARK executed the scheme, included, but were not limited to, the following:

7. CLARK would represent to investors that KRM Services had a prototype of a motorized surfboard that it could manufacture and sell in significant quantities at a profit to cruise lines, resorts, motorsports rental businesses, and other end-users.

8. In some instances, to induce investors to part with money, via email CLARK would provide potential investors with copies of fictitious sales contracts between KRM Services and purchasers of the motorized surfboards.

9. In other instances, to induce investors to part with money, CLARK would fabricate emails purportedly from purchasers or other individuals that falsely confirmed purchase orders of motorized surfboards from KRM Services, Surfstream, and Poseidon.

10. CLARK would also send text messages to investors that contained materially false representations and promises concerning production status and orders for motorized surfboards, among other falsehoods.

11. CLARK would develop marketing materials and hold marketing events for the motorized surfboards, in order to lend an air of legitimacy to the operations of KRM Services, Surfstream, and Poseidon.

12. CLARK would solicit potential investors to invest money in KRM Services in exchange for an ownership share in his company and/or a guaranteed profit in connection with

the development and sale of the motorized surfboards.

13. CLARK would typically memorialize the investments in memoranda of understanding, operating agreements, and secured promissory notes. In these documents, CLARK would falsely represent that he and KRM Services would use investor funds to finance the sale of motorized surfboards to specific buyers, when, in truth and in fact, as CLARK then well knew, such sales did not exist, and he would spend the majority of investor funds on his own personal expenses.

14. CLARK would also falsely represent in certain documents, such as the operating agreement, that he and specific partners had contributed certain amounts of capital to KRM Services in exchange for defined equity shares in KRM Services, statements which he knew were false when he made them, and were made to provide a false sense of comfort to individuals who invested in KRM Services.

15. CLARK would also provide materially false statements to investors concerning the progress and status of the sales of the motorized surfboards, when, in truth and in fact, as CLARK then well knew, there were no sales contracts and investor money had been spent on CLARK's personal expenses.

### *Conduct in Furtherance of the Scheme*

CLARK's conduct in furtherance of the scheme, included, but was not limited to, the following:

<u>Fraudulent Conduct With Respect to Individual N.S. in Maryland</u>

16. Individual N.S. resided in Maryland and had known CLARK for a period of years. Beginning in or around November 2016, CLARK began to solicit Individual N.S. to invest in KRM Services based on promises of expected sales of motorized surfboards.

4

17. On or about December 28, 2016, CLARK forwarded from his email account to Individual N.S. an email from CLARK's business associate, D.J., a real person and practicing attorney, which CLARK had materially altered to state falsely that KRM Services had a verbal commitment from a cruise line to purchase 250 motorized surfboards, with an option to purchase an additional 250 motorized surfboards.

18. On or about March 7, 2017, CLARK forwarded from his email account to Individual N.S., a fictitious email purportedly from an employee of a company falsely stating that the company confirmed quality control testing and acceptance of 85 motorized surfboards.

19. CLARK executed a series of promissory notes and operating agreements with Individual N.S. to memorialize the investments and to provide a false sense of comfort concerning KRM Services and its business operations.

20. Between on or about December 8, 2016 and on or about June 15, 2017, Individual N.S. made four investments with KRM Services for a combined total of $22,500. CLARK spent the majority of Individual N.S.'s money on his own personal expenses.

Fraudulent Conduct with Respect to Individual P.M. in Virginia

21. Individual P.M. resided in Alexandria, in the Commonwealth and Eastern District of Virginia.

22. On or about May 4, 2017, CLARK solicited Individual P.M. to invest in KRM Services via text message.

23. On or about May 4, 2017, CLARK forwarded from his email account to Individual P.M. a fictitious email, purportedly from CLARK's business associate, D.J., which falsely stated that a presentation was scheduled with a cruise line, and falsely indicated that D.J. requested a copy of a signed promissory note from the investor.

24. Under a secured promissory note dated May 4, 2017, between Individual P.M. and CLARK on behalf of KRM Services, CLARK promised to repay the principal investment of $25,000 plus $9,500 in profit, for a total of $34,500, based on the false representation that Individual P.M.'s investment funds would be used for "Surfboard #1003" for purported sale to a real motorsports rental company in Marco Island, Florida.

25. On or about May 4, 2017, Individual P.M. made an initial investment of $25,000 in KRM Services via personal check.

26. On or about May 17, 2017, CLARK sent an email to Individual P.M. with a fabricated sales contract attached. The purported sales contract falsely indicated that a real jet-ski rental company in Naples, Florida had contracted to purchase 5 motorized surfboards from KRM Services for a total sales price of $24,000. The contract bore the signature of CLARK as "seller" and a fictitious person as the owner of the jet-ski rental company.

27. Under a secured promissory note dated May 19, 2017, between Individual P.M. and CLARK on behalf of KRM Services, CLARK promised to repay the principal investment of $12,500 plus $8,000 in profit, for a total of $20,500, based on the false representation that Individual P.M.'s investment funds would be used for "Surfboard #1004" for purported sale to a real jet ski rental company in Naples, Florida.

28. On or about May 19, 2017, Individual P.M. sent from the Eastern District of Virginia to his bank in the District of Columbia via facsimile an outgoing domestic wire transfer request that his bank wire to CLARK's KRM Services Suntrust bank account the amount of $12,500.

29. Under a secured promissory note dated May 25, 2017, between Individual P.M. and CLARK on behalf of KRM Services, CLARK promised to repay the principal investment of

$12,500 plus $8,000 in profit, for a total of $20,500, based on the false representation that Individual P.M.'s investment funds would be used for "Surfboard #1004 (revised) -" for purported sale to a real water sports rental company in Naples, Florida. The secured promissory note called for Individual P.M. to make a $3,000 investment on May 25, 2017, and a $9,500 investment on May 30, 2017.

30. On or about May 25, 2017, Individual P.M. made an investment of $3,000 in KRM Services via personal check.

31. On or about June 1, 2017, Individual P.M. sent from the Eastern District of Virginia to his bank in the District of Columbia via facsimile an outgoing domestic wire transfer request that his bank wire to CLARK's KRM Services Suntrust bank account the amount of $9,500.

32. Under a secured promissory note dated June 5, 2017, between Individual P.M. and CLARK on behalf of KRM Services, CLARK promised to repay the principal investment of $11,000 plus $7,000 in profit, for a total of $18,000, based on the false representation that Individual P.M.'s investment funds would be used for "Surfboard #1006" for purported sale to a real water sports rental company in Ft. Myers Beach, Florida.

33. On or about June 6, 2017, Individual P.M. sent from the Eastern District of Virginia to his bank in the District of Columbia via facsimile an outgoing domestic wire transfer request that his bank wire to CLARK's KRM Services Suntrust bank account the amount of $11,000.

Fraudulent Conduct with Respect to Individual A.D. in Virginia

34. Individual A.D. resided in Springfield, in the Commonwealth and Eastern District of Virginia.

35. In or around August 2017, CLARK began soliciting the spouse of Individual A.D. to invest in KRM Services, based on false representations that KRM Services and Surfstream had been awarded a contract to supply 40 motorized surfboards to a jet-ski rental company in Naples, Florida. The spouse referred the solicitation to Individual A.D.

36. In or around September, 2017, CLARK personally solicited Individual A.D. in Springfield, Virginia, to invest in KRM Services based on false representations and promises that CLARK's company had a contract to sell 40 surfboards to a company in Florida.

37. On or about September 15, 2017, CLARK provided to the spouse of Individual A.D. via email a false and fabricated contract between a real watersports company in Marco Island, Florida and KRM Services, for the purported sale of 40 motorized surfboards for the total purchase price of $192,000. The false contract used without lawful authority the name and title of a real employee of the watersports company, and the forged signature of that same person, identified here by the initials J.M. The false contract also used without lawful authority the name, signature and notary stamp of a real notary public in order to authenticate, falsely, that J.M. had signed the contract, when, as CLARK then well knew, neither J.M. nor the notary, identified here by the initials Z.L., had signed the contract.

38. On or about September 20, 2017, CLARK forwarded via email to the spouse of Individual A.D. a fabricated email from a fictitious person named "Reginald Vidor" who was falsely identified as the manager of the watersports company in Marco Island, Florida, purportedly offering to pay CLARK via wire transfer the same day as delivery of the motorized surfboards.

39. On or about September 28, 2017, CLARK signed an operating agreement with Individual A.D. and spouse, which purported to sell a total of 20% of KRM Services to

Individual A.D. and spouse for an "initial" capital contribution of $40,000 to $50,000. The operating agreement falsely stated that CLARK had made an initial capital contribution of $147,000, which was false, as CLARK then well knew.

40. Between approximately September 28, 2017 through November 2, 2017, CLARK signed several memoranda of understanding between KRM Services with Individual A.D. in which KRM Services guaranteed repayment plus fixed rates of return on loans that Individual A.D. was to provide to KRM Services.

41. Between on or around September 29, 2017 and October 5, 2017, Individual A.D. obtained loans from three different federal credit unions and wired or deposited checks into CLARK's KRM Services Suntrust bank account.

42. On or about December 3, 2017, CLARK forwarded via email to Individual A.D. and spouse a fabricated email message purportedly from D.J. stating that "[w]e were are [sic] very impressed and sold! I have personally given approval to our clients to begin the contracts process." D.J. supposedly continued, "I will also be establishing contract talks with additional clients ..."

43. Individual A.D provided her credit card number to CLARK to use for the authorized purpose of funding the supposed development of the motorized surfboards.

44. During November and December 2017, CLARK used the credit card numbers of Individual A.D. to fund his personal expenses.

Fraudulent Conduct with Respect to Individual C.B. in Virginia

45. Individual C.B. resided in Alexandria, in the Commonwealth and Eastern District of Virginia. Individual C.B. met CLARK through a referral.

46. On or about August 30, 2017, in Arlington, Virginia, CLARK met with Individual

9

C.B. in person and solicited him to invest in KRM Services.

47. From in or around August 2017 through in or around August 2018, CLARK forwarded via email to Individual C.B. fabricated documents and emails containing false contractual and sales information between cruise lines and KRM Services. These included, among others:

  a. On or about September 21, 2017, CLARK forwarded via email to Individual C.B. a fabricated email from a fictitious person named "Reginald Vidor" who was falsely identified as the manager of the watersports company in Marco Island, Florida, purportedly offering to pay CLARK via wire transfer the same day as delivery of the motorized surfboards.

  b. On or about January 10, 2018, CLARK forwarded via email to Individual C.B. a fabricated email from an employee of a cruise line attaching a false contract for the purchase of equipment, namely 1,000 motorized surfboards at a total price of $3,200,000.

48. Between on or about September 21, 2017 and on or about August 2, 2018, Individual C.B. made eight investments with KRM Services totaling approximately $40,000. CLARK used Individual C.B.'s funds for his personal expenses.

Fraudulent Conduct with Respect to Other Individuals

49. Between in or around September 2016 and continuing through at least in or around February 2019, CLARK made similar materially false representations and promises to additional individuals, including but not limited to: Individuals C.T., M.B., and B.D.

*The Interstate Wire Communications*

50. On or about the dates below, in the Eastern District of Virginia and elsewhere,

defendant ROBERTO CLARK, having knowingly devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as set forth below, each such wire transmission being a separate count:

| Count | Date | Wire Communication |
|---|---|---|
| 1 | 5/19/2017 | Facsimile transmission of an outgoing domestic wire transfer request sent by Individual P.M. from the Eastern District of Virginia to his bank located outside of the Commonwealth of Virginia, requesting that his bank wire to CLARK's KRM Services Suntrust bank account the amount of $12,500. |
| 2 | 6/1/2017 | Facsimile transmission of an outgoing domestic wire transfer request sent by Individual P.M. from the Eastern District of Virginia to his bank located outside of the Commonwealth of Virginia, requesting that his bank wire to CLARK's KRM Services Suntrust bank account the amount of $9,500. |
| 3 | 6/6/2017 | Facsimile transmission of an outgoing domestic wire transfer request sent by Individual P.M. from the Eastern District of Virginia to his bank located outside of the Commonwealth of Virginia, requesting that his bank wire to CLARK's KRM Services Suntrust bank account the amount of $11,000. |
| 4 | 8/16/2017 | Email from Rclark@krmservices.biz from a location outside of the Commonwealth of Virginia to Individual A.K., spouse of Individual A.D., in the Eastern District of Virginia, forwarding attachments, including a purported contract for sale of goods with a real motorsports rental company in Marco Island, Florida. |
| 5 | 1/18/2018 | Email from Rclark@krmservices.biz from a location outside of the Commonwealth of Virginia to Individual C.B. in the Eastern District of Virginia with subject line "new investment numbers." |

(All in violation of Title 18, United States Code, Sections 1343 and 2)

## Forfeiture Notice

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE FOR FORFEITURE AS DESCRIBED BELOW:

Pursuant to Federal Rule of Criminal Procedure 32.2(a), defendant ROBERTO CLARK is hereby notified that, if convicted of the wire fraud offenses alleged in Counts One through Five above, he shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the following property:

(a) A sum of money not less than $375,000 in U.S. currency, representing the amount of proceeds obtained as a result of the violation of Title 18, United States Code, Section 1343, as described in Counts One through Five;

(b) Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant ROBERTO CLARK shall forfeit substitute property, up to the value of the amount described in subparagraph (a), if, by any act or omission of defendant ROBERTO CLARK, the property described in paragraph (a), or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been comingled with other property which cannot be divided without difficulty.

(All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code Section 2461(c).)

A True Bill

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office

_____                    _____
Date                                        Foreperson


G. Zachary Terwilliger
United States Attorney

By: _____
Russell L. Carlberg
Special Assistant United States Attorney LT
Kimberly R. Pedersen
Assistant United States Attorney

AO 442 (Rev 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 1:19-CR-332 |
| ROBERTO CLARK, | ) | |
| | ) | **20-2257-MJ-MCALILEY** |
| | ) | |
| *Defendant* | ( | |

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* ROBERTO CLARK,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☐ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Counts 1-5:    In violation of 18 U.S.C. §§ 1343 and 2         Wire Fraud

Date: 11/7/2019

_____
Issuing officer's signature

City and state: Alexandria, Virginia

Deisy Estevez, Deputy Clerk
Printed name and title

### Return

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____

_____
Arresting officer's signature

_____
Printed name and title

**INFORMATION COPY ONLY**
**NOTICE: BEFORE ARREST, VALIDATE THROUGH NCIC. ORIGINAL HELD BY U.S. MARSHAL.**